# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Toni Larusso, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 7:21-cv-10849-PMH |
| vs. | JURY TRIAL DEMANDED |
| CVS Health Corporation, and CVS Pharmacy, Inc. | |
| *Defendant*s | |

### First Amended Class Action Complaint

i

## **Table of Contents**

I.    Introduction. ........................................................................................................... 1

II.   Parties. ................................................................................................................... 1

III.  Jurisdiction and Venue. ........................................................................................ 2

IV.   Facts. ..................................................................................................................... 3

      A.    Defendants make, market, and sell CVS Health products prominently labeled "Non-Drowsy." .................................................................................. 3

      B.    The Non-Drowsy CVS Products cause drowsiness. .................................... 7

      C.    Defendants' Non-Drowsy representations are misleading to reasonable consumers. .................................................................................................. 8

      D.    Plaintiff was misled by Defendants' misrepresentations ......................... 12

      E.    Class Action Allegations ........................................................................... 13

V.    Claims. ................................................................................................................. 15

VI.   Jury Demand. ...................................................................................................... 23

VII.  Prayer for Relief. ................................................................................................ 23

## I.    Introduction.

1.      The CVS Defendants make, sell, and market "CVS Health" over-the-counter cough medicine, including generic CVS versions of brands like Robitussin, DayQuil, and Tylenol.  Like the branded versions, many of these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM").  Many such CVS Health products state prominently on the front of their label that they are "Non-Drowsy." [1]

2.      By prominently labeling these products as "Non-Drowsy," Defendants led Plaintiff and other reasonable consumers to believe that the Non-Drowsy CVS Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  But the truth is that products containing DXM—and thus the Non-Drowsy CVS Products—do cause drowsiness, and that drowsiness is a common side effect of DXM.

3.      In this way, Defendants misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy CVS Products.  This was a material misrepresentation that Plaintiff—and other reasonable consumers—relied on when deciding to buy the products.  Consumers purchase "Non-Drowsy" cough syrups specifically because they want to avoid drowsiness, like at work or when driving.  Had Defendants been truthful, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

4.      Plaintiff brings this case individually and for millions of other consumers who purchased Non-Drowsy CVS Products within the United States.

## II.    Parties.

5.      Plaintiff is a citizen of New York (domiciled in Middletown, New York).  The proposed class (identified below) includes citizens of every state within the United States.

---

[1] Throughout this Complaint, CVS Health products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy CVS Products."

6.      Defendant CVS Health Corporation ("CVS Health") is a citizen of Rhode Island and Delaware.  Its headquarters are at One CVS Drive, Woonsocket, Rhode Island.  It is incorporated in Delaware.

7.      Defendant CVS Pharmacy, Inc. ("CVS Pharmacy") is a citizen of Rhode Island and Delaware.  Its headquarters are at One CVS Drive, Woonsocket, Rhode Island.  It is incorporated in Delaware.

**III.    Jurisdiction and Venue.**

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

9.      The Court has personal jurisdiction over Defendants because they sold the Non-Drowsy CVS Products to consumers in New York, including Plaintiff.  Defendants have been doing business in New York during all relevant times.  Directly and through their agents, Defendants have substantial contacts with, and receive substantial benefits and income from New York.

10.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants sold the Non-Drowsy CVS Products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Defendants' sale to Plaintiff.

IV.    **Facts.**

   A.    **Defendants make, market, and sell CVS Health products prominently labeled "Non-Drowsy."**

11.    CVS Health makes, markets and sells the Non-Drowsy CVS Products and is therefore liable for them.  In its 10-K, CVS Health states: "The Company continues to launch and enhance new and exclusive brands to create unmatched offerings in beauty products and deliver other unique product offerings, including a full range of high-quality CVS Health and other proprietary brand products that are only available through CVS stores. The Company currently carries approximately 6,000 CVS Health and proprietary brand products, which accounted for approximately 24% of front store revenues during 2020."   It further states that "[a] typical retail store sells prescription drugs and a wide assortment of high-quality, nationally advertised brand name and proprietary brand merchandise," and that the "Company purchases merchandise from numerous manufacturers and distributors."

12.    In addition or in the alternative, CVS Pharmacy makes, markets and sells the Non-Drowsy CVS Products and is therefore liable for them.  In a recent case, the same CVS Defendants here asserted that "CVS Health … is a mere holding company and that CVS Pharmacy … controls stores and store-brand products."  *Mier v. Cvs Pharmacy*, No. SA CV 20-1979-DOC, 2021 U.S. Dist. LEXIS 150423, at *24 (C.D. Cal. Apr. 29, 2021).  The court rejected Defendants' contention that CVS Health had no responsibility for the products at issue, and held:

> Plaintiff refers to CVS Health's most recent 10K filing where "CVS Health cited its—and not a subsidiary's—'strategy of innovating with new and unique products and service, using innovative personalized marketing and adjusting the mix of merchandize to match customers' needs and preferences.'"  Reply at 3-4 (citing Marquez Decl., Exh. 1). The CVS Health 10K also states that CVS Health—and not a subsidiary—offers the ExtraCare card program, and CarePass, a subscription-based membership.  *Id.*  The 10K further states that CVS Health—and not a subsidiary—"continues to launch and enhance new and exclusive brands to create unmatched offerings in beauty products and deliver other unique product offerings, including a full range of high-quality CVS Health and other

propriety brand products that are only available through CVS stores." *Id.* CVS Health proceeds to state that it carries "approximately 6,000 CVS Health and proprietary brand products, which accounted for approximately 24% of front store revenues during 2020." *Id.* Furthermore, CVS Health states, in its 10K, that it "purchases merchandise from numerous manufacturers and distributors" and sells "a wide assortment of high-quality . . . proprietary brand merchandise." *Id.* Finally, CVS's privacy policy lists CVS Health and its address as the entity/location for contact, and links to a page welcoming comments or questions by mail, which includes the same address for CVS Corporation. *Id.* This same address is listed on Bloomberg for CVS Pharmacy. *Id.*

13.    The front label of each Non-Drowsy CVS Product prominently states that the product is "Non-Drowsy." For example:

**CVS Health Tussin:**



*Red annotations added*

4

**CVS Health Multi-Symptom Cold Relief:**



*Red annotations added*

**CVS Health Daytime Cold & Flu Relief:**



*Red annotations added*

14.     These representations are materially the same across Non-Drowsy CVS Products.

15.     The Non-Drowsy CVS Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect.

6

16.    Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is not a side effect of the product.

17.    Defendants labeled the products this way because they intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.    The Non-Drowsy CVS Products cause drowsiness.**

18.    In truth, products containing DXM—like the Non-Drowsy CVS Products—do cause drowsiness and drowsiness is a documented side effect of DXM. [2]

19.    In fact, drowsiness is a common side effect at the recommended dosages.  For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [3,4]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many CVS Health products. [5]

---

[2] Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (listing drowsiness as a side effect)

[3] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).

[4] The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence

[5] For example: CVS Health Non-Drowsy Daytime Multi-Symptom Cold/Flu Relief Liquid contains 20mg of DXM per 30ml of liquid cough syrup and the recommended dosage for adults and children 12 and over is 30ml every 4 hours; and CVS Health Tussin DM Adult Cough & Chest Congestion Maximum Strength Liquid contains 20mg of DXM per 20ml of liquid cough syrup and the recommended dosage for adults and children 12 and over is 20ml every 4 hours.

20.     The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side effects of dextromethorphan-containing products. [6]

21.     For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting medicines that contain "dextromethorphan": [7]

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives** after the last dose (see above). |
| --- | --- | --- | --- | --- |
| **Cough** | | | | |

## C.     Defendants' Non-Drowsy representations are misleading to reasonable consumers.

22.     The Food and Drug Administration prohibits drug labeling that is "false or misleading."  21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

23.     Based on the fact that Defendants labeled the Non-Drowsy CVS Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products (much less a common side effect).  Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [8] This is the plain meaning of "non-drowsy," which means "not causing or accompanied by

---

[6] Sedation is associated with drowsiness. *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")
[7] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf
[8] How to read over the counter (OTC) drug labels, Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-the-over-the-counter-drug-labels/index.htm

drowsiness." [9]  Moreover, reasonable consumers including Plaintiff, are not aware that DXM causes drowsiness, or that drowsiness is a side effect of DXM.

24.     CVS Health's labeling does not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise put a reasonable consumer on notice of the fact that the Non-Drowsy CVS Products actually cause drowsiness.

25.     Unlike Defendants, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth.



26.     So Defendants could have simply omitted the false and misleading statement, "Non-Drowsy," from the Non-Drowsy CVS Products.

---

[9] https://www.merriam-webster.com/medical/nondrowsy

9

27.     Or, if Defendants wanted to say something to indicate that a Non-Drowsy CVS

Product might cause *less* drowsiness than another product, they could have made a truthful

statement to this effect, as other drug makers do.

28.     For example, Dramamine contains an active ingredient that causes drowsiness,

Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active

ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less

Drowsy prominently displays that it is "less drowsy":



29.     Whether or not an over-the-counter drug causes drowsiness is material to a

reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not

make them drowsy to products that may make them drowsy.  For example, all else equal, a

reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does

cause drowsiness during the day (or any periods of time when they plan to be awake).  As a

second example, if a consumer is planning to engage in activities that require them to be alert

(like work), or during which they would prefer to be alert, that consumer would prefer to take a

drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving is dangerous.  Indeed, reasonable consumers purchase over-the-counter drugs labelled "Non-Drowsy" specifically for situations in which they need to remain alert and non-drowsy.

30.     Defendants' false statements increased the demand for the Non-Drowsy CVS Products and allowed Defendants to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving).  As a result, the "Non-Drowsy" claim artificially increased consumer demand for the Non-Drowsy CVS Products, which in turn increased the price that Defendants were able to charge for the Non-Drowsy CVS Products compared to what they would be able to charge for those same products in the absence of the "Non-Drowsy" claim.  Said another way, as a result of the "Non-Drowsy" claims, consumers were willing to pay, and did pay, a higher price for the Non-Drowsy CVS products than they would have for identical products that were not deceptively labelled, i.e., for those same products in the absence of the "Non-Drowsy" claim.  Accordingly, as a direct result of Defendants' false statements, Defendants were able to charge a price premium for these products.  As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury for this reason.

31.     For example, CVS Health Tussin DM is currently priced at $11.49 (for 12 ounces) on the CVS website.  This price is artificially inflated by the misleading "Non-Drowsy" claim.  If this misleading claim were removed, demand would drop, which in turn would reduce the market price.  This price premium can be quantified (i.e., a dollar figured measure) using

expert economic analysis of data that includes, among other things, sales and pricing information uniquely within the possession of Defendants.

32.     In addition, because the Non-Drowsy CVS Products actually do cause drowsiness, Plaintiff and each class member did not get what they paid for: a cough medicine that does not cause drowsiness.  Instead, they received something that is worth less: a cough medicine that is otherwise identical to what they paid for, but does in fact cause drowsiness.  Plaintiff and each class member sustained an economic injury for this additional reason, i.e., they received something worth less than the price they paid for it.

33.     Moreover, the Non-Drowsy CVS Products are sold specifically for use in situations where it is not acceptable for consumers to become drowsy (e.g., while driving, working, or supervising children).  As a result, the products that Plaintiff and each class member did receive in exchange for the price they paid—Non-Drowsy CVS Products that cause drowsiness—were not suitable for, and were thus worthless for, their intended purpose.  So the economic injury Plaintiff and each class member sustained consists of the entire purchase price of the product or products they purchased, because what they received in exchange for the price they paid was worthless for its intended use.

**D.     Plaintiff was misled by Defendants' misrepresentations**

34.     In or around September 2021, Plaintiff bought CVS Health Severe Tussin CF from a CVS store in Chester, New York (near her home in Middletown).  The package said "Non-Drowsy" prominently on the label, and Plaintiff read and relied on this statement when purchasing the product.  But when Plaintiff took the recommended dose of the medication as directed on the label by Defendants, she became unexpectedly drowsy while driving her daughter.  Plaintiff was not on any other medication at the time, nor was there any other potential cause for this drowsiness, aside from the ingredients in the CVS medication. Plaintiff would not

have bought this product had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side effect of the product.  The price Plaintiff paid for the CVS Health Severe Tussin CF was inflated due to the misleading "Non-Drowsy" label, for the reasons set forth above.  In fact, because the product causes drowsiness, it was worthless to her.

35.     Plaintiff would purchase Non-Drowsy CVS Products again for non-drowsy use if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

   **E.**  **Class Action Allegations.**

36.     Plaintiff brings the asserted claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy CVS Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

37.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

38.     For certain claims, Plaintiff brings those claims on behalf a subclass of consumers who, like Plaintiff, purchased Non-Drowsy CVS Products in New York (the "**New York Subclass**").

39.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and

consultants; and (6)  the legal representatives, successors, and assigns of any such excluded

persons.

### *Numerosity*

40.     The proposed class contains members so numerous that separate joinder of each

member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy CVS

Products, there are millions of proposed class members.

### *Commonality*

41.     There are questions of law and fact common to the proposed class.  Common

questions of law and fact include, without limitation:

- Whether the Non-Drowsy CVS Products cause drowsiness;

- Whether Defendants' labelling of the Non-Drowsy CVS Products as "Non-Drowsy" is deceptive and misleading;

- Whether Defendants violated state consumer protection statutes;

- Whether Defendants committed a breach of express warranty; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality*

42.     Plaintiff's claims are typical of the proposed class.  Like the proposed class,

Plaintiff purchased Non-Drowsy CVS Products.  Like the proposed class, Plaintiff would not have

purchased the products, or would have paid less for them, had Plaintiff known that they cause

drowsiness.

### *Predominance and Superiority*

43.     The prosecution of separate actions by individual members of the proposed class

would create a risk of inconsistent or varying adjudication with respect to individual members,

which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same express warranty is found for some  proposed class members, but not others.

44.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendants' "Non-Drowsy" labeling is false and misleading.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.    Claims.**

**Count I: Breach of Express Warranty**
**(on behalf of Plaintiff and a Nationwide Class)**

46.     Plaintiff incorporates by reference each and every factual allegation set forth above.

47.     Plaintiff brings this count individually and for the Nationwide Class.

48.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers of the Non-Drowsy CVS Products, issued written warranties by representing that the products were "Non-Drowsy."  This was an affirmation of fact about the products (i.e., a description of the effects) and a promise relating to the goods.

49.     This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

50.     In fact, the Non-Drowsy CVS Products do not conform to the above-referenced representation because they cause drowsiness and thus the warranty was breached.

51.     Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy CVS Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because the products are sold at a price premium due to Defendants' warranty; or (c) they received products that were worthless for their intended purpose.

## Count II: Breach of the Magnuson-Moss Warranty Act
### (on behalf of Plaintiff and the Nationwide Class)

52.     Plaintiff incorporates by reference each and every factual allegation set forth above.

53.     Plaintiff brings this count individually and for the Nationwide Class.

54.     Defendants supplied Non-Drowsy CVS Products to consumers and Non-Drowsy CVS Products are consumer products.

55.     Defendants issued material, written warranties by representing that the products were "Non-Drowsy."  This was an affirmation of fact about the material in the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

56.     Defendants represented that the material inside the products (the ingredients) would meet a specified level of performance over a specified period of time.  Defendants represented that, when taken at the recommended dosages, the products' ingredients would not cause drowsiness and drowsiness is not a side effect.

16

57.      This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

58.      In fact, the Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was breached.

59.      Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy CVS Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because the products are sold at a price premium due to Defendants' warranty; or (c) they received products that were worthless for their intended purpose.

### Count III: Violations of State Consumer Protection Acts
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

60.      Plaintiff incorporates by reference each and every factual allegation set forth above.

61.      This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following. |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |

17

| | |
|---|---|
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |

| | |
|---|---|
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

62.     Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendants' conduct, including the false labelling of the Non-Drowsy CVS Products and sale of those misleading products to Plaintiff and class members, violates each statute's prohibitions.

63.     Defendants' misrepresentations were misleading to a reasonable consumer, and Plaintiff and class members reasonably relied on Defendants' misrepresentations.

64.     Defendants intended that Plaintiff and class members would rely on Defendants' "Non-Drowsy" representations.  Defendants were aware of the side effects of DXM and thus knew that its representations were false and misleading to reasonable consumers.

65.     For applicable statutes, Plaintiff is contemporaneously providing written notice and a demand for correction (along with notice of other claims alleged here).  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

66.     Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of class members.

67.     Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased Non-Drowsy CVS Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because the products are sold at a price premium due to Defendants' misrepresentations, or (c) they received products that were worthless for their intended purpose.  In this way, Plaintiff and class members have suffered an ascertainable loss, in an amount to be determined at trial.

### Count IV: Violation of New York Gen. Bus. Law § 349
### (on behalf of Plaintiff and the New York Subclass)

68.     Plaintiff incorporates by reference each and every factual allegation set forth above.

69.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

70.     Plaintiff and the Subclass purchased Non-Drowsy CVS Products in New York.

71.     Defendants' false and misleading "Non-Drowsy" claims are consumer-oriented. Defendants' misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy CVS Products. These transactions recur every day.

72.     Defendants' "Non-Drowsy" misrepresentations were material.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected their choice to purchase Non-Drowsy CVS Products.  And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers under the circumstances.

73.     Defendants' misrepresentations were willful and knowing.  Because Defendants make and sell the Non-Drowsy CVS Products, Defendants researched the known and common side effects of DXM.  This is diligence that a large company like CVS would do when selling a drug.  As a result, Defendants know that DXM causes drowsiness.  Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" representations, and know the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.

74.     Plaintiff and Subclass members suffered an injury as a result of Defendants' misrepresentations.  Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy"), they overpaid for the products because they are sold at a price premium due to Defendants' misrepresentations, and they received products that were worthless for their intended purpose.

75.     Plaintiff and the Subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief.  *See* N.Y.Gen.Bus.Law § 349 (h).

### Count V: Violation of New York Gen. Bus. Law § 350
**(on behalf of Plaintiff and the New York Subclass)**

76.     Plaintiff incorporates by reference each and every factual allegation set forth above.

77.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

78.     Plaintiff and the Subclass purchased Non-Drowsy CVS Products in New York.

79.     Defendants' false and misleading "Non-Drowsy" claims impacted consumers at large.  Defendants' misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy CVS Products.  These transactions recur every day.

80.     Defendants' "Non-Drowsy" claims were deceptive and misleading in a material way.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected their choice to purchase Non-Drowsy CVS Products.  And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers under the circumstances.

81.     Plaintiff and the Subclass saw and relied on Defendants' "Non-Drowsy" misrepresentations.

82.     Defendants' misrepresentations were willful and knowing.  Because Defendants make and sell the Non-Drowsy CVS Products, Defendants researched the known and common side effects of DXM.  This is diligence that a large company like CVS would do when selling a

drug.  As a result, Defendants know that DXM causes drowsiness.  Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" representations, and know the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.

83.     Plaintiff and Subclass members suffered an injury as a result of Defendants' misrepresentations.  Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy"), they overpaid for the products because they are sold at a price premium due to Defendants' misrepresentations, and they received products that were worthless for their intended purpose.

84.     Plaintiff and the Subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorneys' fees, and all other available relief.  *See* N.Y.Gen.Bus.Law § 350-e (3).

**VI.     Jury Demand.**

85.     Plaintiff demands a jury trial on all issues so triable.

**VII.     Prayer for Relief.**

86.     Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages (including under N.Y.Gen.Bus.Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;

- Restitution;

23

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Date: March 1, 2022                                Respectfully submitted,

By:     /s/ *Jonas Jacobson*
        Jonas Jacobson

        DOVEL & LUNER, LLP
        Jonas Jacobson
        Simon Franzini
        201 Santa Monica Blvd., Suite 600
        Santa Monica, CA 90401
        (310) 656-7066
        jonas@dovel.com
        simon@dovel.com

        Counsel for Plaintiff and the Proposed Class