## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Toni Larusso, individually and on behalf of all
others similarly situated,

        *Plaintiff*,

vs.

CVS Pharmacy, Inc.

        *Defendant*

Case No. 7:21-cv-10849-PMH

Hon. Philip M. Halpern

JURY TRIAL DEMANDED

## <u>Second Amended Class Action Complaint</u>

i

## **Table of Contents**

I.      Introduction. ........................................................................................................ 1

II.     Parties. ............................................................................................................... 2

III.    Jurisdiction and Venue. ..................................................................................... 2

IV.     Facts. .................................................................................................................. 3

        A.      Defendant makes, markets, and sells CVS Health products prominently
                labeled "Non-Drowsy." ......................................................................... 3

        B.      The Non-Drowsy CVS Products cause drowsiness. ................................. 6

        C.      Defendant's Non-Drowsy representations are misleading to reasonable
                consumers. ............................................................................................. 8

        D.      Plaintiff was misled by Defendant's misrepresentations. ..................... 12

        E.      The FDA has never approved Defendant's false Non-Drowsy claim. ............... 13

        F.      Class Action Allegations ....................................................................... 17

V.      Claims. .............................................................................................................. 19

VI.     Jury Demand. .................................................................................................... 26

VII.    Prayer for Relief. .............................................................................................. 26

I.    **Introduction.**

1.    Defendant CVS Pharmacy makes, sells, and markets "CVS Health" over-the-counter cough medicine, including generic CVS versions of brands like Robitussin, DayQuil, and Tylenol.  Like the branded versions, many of these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM").  Many such CVS Health products state prominently on the front of their label that they are "Non-Drowsy." [1]

2.    By prominently labeling these products as "Non-Drowsy," Defendant led Plaintiff and other reasonable consumers to believe that the Non-Drowsy CVS Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  But the truth is that products containing DXM—and thus the Non-Drowsy CVS Products—do cause drowsiness, and that drowsiness is a common side effect of DXM.

3.    In this way, Defendant misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy CVS Products.  This was a material misrepresentation that Plaintiff—and other reasonable consumers—relied on when deciding to buy the products.  Consumers purchase "Non-Drowsy" cough syrups specifically because they want to avoid drowsiness, like at work or when driving.  Had Defendant been truthful, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

4.    Plaintiff brings this case individually and for millions of other consumers who purchased Non-Drowsy CVS Products within the United States.

---

[1] Throughout this Complaint, CVS Health products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy CVS Products."

II.    **Parties.**

5.    Plaintiff Toni Larusso is a citizen of New York (domiciled in Middletown, New York).  The proposed class (identified below) includes citizens of every state within the United States.

6.    Defendant CVS Pharmacy, Inc. ("CVS Pharmacy") is a citizen of Rhode Island and Delaware.  Its headquarters are at One CVS Drive, Woonsocket, Rhode Island.  It is incorporated in Delaware.

III.    **Jurisdiction and Venue.**

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

8.    The Court has personal jurisdiction over Defendant because it sold the Non-Drowsy CVS Products to consumers in New York, including Plaintiff.  Defendant has been doing business in New York during all relevant times.  Directly and through its agents, Defendant has substantial contacts with, and receives substantial benefits and income from New York.

9.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold the Non-Drowsy CVS Products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

### IV.    Facts.

**A.    Defendant makes, markets, and sells CVS Health products prominently labeled "Non-Drowsy."**

10.    CVS Pharmacy makes, markets and sells the Non-Drowsy CVS Products and is therefore liable for them.

11.    The front label of each Non-Drowsy CVS Product prominently states that the product is "Non-Drowsy."  For example:

**CVS Health Tussin:**



*Red annotations added*

**CVS Health Multi-Symptom Cold Relief:**



*Red annotations added*

**CVS Health Daytime Cold & Flu Relief:**



*Red annotations added*

12.     These representations are materially the same across Non-Drowsy CVS Products.

13.     Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is not a side effect of the product.

14.     Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.     The Non-Drowsy CVS Products cause drowsiness.**

15.     In truth, products containing DXM—like the Non-Drowsy CVS Products—do cause drowsiness and drowsiness is a documented side effect of DXM. For example, the National Institute of Health identifies drowsiness as a side effect of DXM. This is true both for normal doses and (unsurprisingly) also for overdoses.[2]

16.     In fact, drowsiness is a common side effect at the recommended dosages.  For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine.[3, 4]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many CVS Health products.[5]

---

[2] Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html ("What side effects can this medication cause? … drowsiness"); *id.* (separately identifying drowsiness as an effect of overdose); https://medlineplus.gov/about/ ("MedlinePlus is a service of the National Library of Medicine (NLM), the world's largest medical library, which is part of the National Institutes of Health (NIH). Our mission is to present high-quality, relevant health and wellness information that is trusted….")

[3] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).

[4] The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence

[5] For example: CVS Health Non-Drowsy Daytime Multi-Symptom Cold/Flu Relief Liquid contains 20mg of DXM per 30ml of liquid cough syrup and the recommended dosage for adults and children 12 and over is 30ml every 4 hours; and CVS Health Tussin DM Adult Cough & Chest Congestion Maximum Strength

17.    According to a 2017 GlaxoSmithKline presentation on drug labeling, a "common" adverse reaction (i.e., side effect) is one that occurs in 3% or more of drug takers and a "very common" side effect occurs in 10% or more of drug takers. So by industry standards, drowsiness is a "very common" side effect of DXM.

18.    Additionally, Pfizer issued a safety data sheet for Robitussin (the branded equivalent of some CVS Health products) in 2015. That data sheet states: "Common adverse reactions associated with the clinical use of dextromethorphan hydrobromide include … drowsiness." [6]

19.    The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side effects of dextromethorphan-containing products. [7]

20.    Because DXM causes drowsiness, the Federal Aviation Administration prohibits pilots from flying after ingesting medicines that contain "dextromethorphan": [8]

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine) | dextromethorphan (Delsym) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives after the last dose (see above).** |
| **Cough** | | guaifenesin (found in Mucinex and Robitussin) Mucinex fast-max severe congestion and cough (liquid) Identify combo vs isolated | Dayquil (contains dextromethorphan) Most "night-time" or "PM" medications contain a sedating antihistamine: - Coricidin HBP cough & cold (contains chlorpheniramine) - Nyquil (contains doxylamine) | |

Liquid contains 20mg of DXM per 20ml of liquid cough syrup and the recommended dosage for adults and children 12 and over is 20ml every 4 hours.

[6] https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBITUSSIN_DM_SYRP_4OZ.pdf

[7] Sedation is associated with drowsiness. *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")

[8] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

21.    As shown above, the FAA cautions against both (1) "combination products" that have "sedating antihistamines" for "night-time" use and, independently (2) purportedly daytime cough medicines that contain DXM.  For example, the FAA specifically warns against Dayquil, a DXM drug that is antihistamine free and that Defendant copies (as illustrated above).  The FAA also cautions against all medicines with "DM" on the label (short for dextromethorphan).  This necessarily includes Defendant's "DM" medicines, pictured above. This is because, as the FAA has recognized, DXM causes drowsiness.

C.    **Defendant's Non-Drowsy representations are misleading to reasonable consumers.**

22.    The Food and Drug Administration prohibits drug labeling that is "false or misleading."  21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

23.    Based on the fact that Defendant labeled the Non-Drowsy CVS Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products (much less a common side effect).  Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [9]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness." [10]  Moreover, reasonable consumers including Plaintiff (until recently), are not aware that DXM causes drowsiness, or that drowsiness is a side effect of DXM.

24.    Moreover, reasonable consumers including Plaintiff (until recently), are not aware that DXM causes drowsiness, or that drowsiness is a side effect of DXM.  And Defendants'

---

[9] How to read over the counter (OTC) drug labels, Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[10] https://www.merriam-webster.com/medical/nondrowsy

prominent "Non-Drowsy" claim makes it difficult for consumers to realize that they are being misled.  Consumers who get drowsy while taking the Non-Drowsy Products will reasonably (but wrongly) conclude that those products did not cause their drowsiness because of the reassuring (but false) "Non-Drowsy" claim.  As a result, consumers keep taking dose after dose of the product, with adverse and potentially dangerous results.  Put another way, even if consumers try to figure out the cause of their drowsiness, the last source they will identify is the Non-Drowsy Products, because Defendant affirmatively tells consumers that this medicine is not the cause of their drowsiness.

25.     Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth.



26.     So Defendant could have simply omitted the false and misleading statement, "Non-Drowsy," from the Non-Drowsy CVS Products.

27.     Or, if Defendant wanted to say something to indicate that a Non-Drowsy CVS Product might cause *less* drowsiness than another product, it could have made a truthful statement to this effect, as other drug makers do.

28.     For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":



29.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable consumer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a

reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert (like work), or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving is dangerous.  Indeed, reasonable consumers purchase over-the-counter drugs labeled "Non-Drowsy" specifically for situations in which they need to remain alert and non-drowsy.

30.     Defendant's false statements increased the demand for the Non-Drowsy CVS Products and allowed Defendant to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving).  As a result, the "Non-Drowsy" claim artificially increased consumer demand for the Non-Drowsy CVS Products, which in turn increased the price that Defendant was able to charge for the Non-Drowsy CVS Products compared to what it would be able to charge for those same products in the absence of the "Non-Drowsy" claim.  Said another way, as a result of the "Non-Drowsy" claims, consumers were willing to pay, and did pay, a higher price for the Non-Drowsy CVS products than they would have for identical products that were not deceptively labeled, i.e., for those same products in the absence of the "Non-Drowsy" claim.  Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for these products.  As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury for this reason.

31.     For example, CVS Health Tussin DM is currently priced at $11.49 (for 12 ounces) on the CVS website.  This price is artificially inflated by the misleading "Non-Drowsy" claim.  If this misleading claim were removed, demand would drop, which in turn would reduce the market price.  This price premium can be quantified (i.e., a dollar figured measure) using expert economic analysis of data that includes, among other things, sales and pricing information uniquely within the possession of Defendant.

32.     In addition, because the Non-Drowsy CVS Products actually do cause drowsiness, Plaintiff and each class member did not get what they paid for: a cough medicine that does not cause drowsiness.  Instead, they received something that is worth less: a cough medicine that is otherwise identical to what they paid for, but does in fact cause drowsiness.  Plaintiff and each class member sustained an economic injury for this additional reason, i.e., they received something worth less than the price they paid for it.

33.     Moreover, the Non-Drowsy CVS Products are sold specifically for use in situations where it is not acceptable for consumers to become drowsy (e.g., while driving, working, or supervising children).  As a result, the products that Plaintiff and each class member did receive in exchange for the price they paid—Non-Drowsy CVS Products that cause drowsiness—were not suitable for, and were thus worthless for, their intended purpose.  So the economic injury Plaintiff and each class member sustained consists of the entire purchase price of the product or products they purchased, because what they received in exchange for the price they paid was worthless for its intended use.

**D.    Plaintiff was misled by Defendant's misrepresentations.**

34.     In or around September 2021, Plaintiff bought CVS Health Severe Tussin CF from a CVS store in Chester, New York (near her home in Middletown).  The package said "Non-Drowsy" prominently on the label, and Plaintiff read and relied on this statement when

12

purchasing the product.  But when Plaintiff took the recommended dose of the medication as directed on the label by Defendant, she became unexpectedly drowsy while driving her daughter. Plaintiff was not on any other medication at the time, nor was there any other potential cause for this drowsiness, aside from the ingredients in the CVS medication. Plaintiff would not have bought this product had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side effect of the product.  The price Plaintiff paid for the CVS Health Severe Tussin CF was inflated due to the misleading "Non-Drowsy" label, for the reasons set forth above.  In fact, because the product causes drowsiness, it was worthless to her.

### E.    The FDA has never approved Defendant's false Non-Drowsy claim.

35.    No FDA regulation allows cough medicines containing DXM to be labeled "Non-Drowsy" and the FDA has never considered whether this claim is false and misleading.  (Nor would the FDA ever approve such a claim, because it is in fact false and misleading).

36.    To be clear, Plaintiffs are not seeking to require Defendant to add any additional warning or disclosure to the label.  Instead, Plaintiffs seek to require Defendant to remove the misleading "Non-Drowsy" statement that Defendant has voluntarily added to sell more products and to overcharge consumers.

37.    For certain over-the-counter drugs like Defendant's cough syrups, the FDA issues regulations known as monographs.  Monographs identify the active ingredients that can be marketed for certain uses (for example, cough remedies).  *E.g.*, 21 C.F.R. § 341.1.  They also set forth all of the required disclosures and warnings that must be included on the label.  *E.g.*, 21 C.F.R. § 341.74.  The required disclosures generally include a "statement of identity" (the name of the product and what kind of medicine it is, for example a cough suppressant); the use "indications" for the product; the warnings that must be included; and the directions for safe use. *Id.*

38.     Monographs do not, however, catalog every conceivable labeling claim and say whether it is prohibited or allowed, truthful or deceptive.  *See generally* 21 C.F.R. §§ 341 et. seq. Nor does the FDA individually review every statement on over-the-counter drug labels to ensure that they are truthful and not misleading, before approving the drug for sale.  Instead, FDA regulations simply provide that the label must comply with the general requirements of the Act, including the general prohibition on "false or misleading" labeling statements.  21 § C.F.R 330.1 (in addition to complying with the monograph, drug must be "labeled in compliance with chapter V" of the Act); 21 U.S.C. § 352 (Chapter V of the Act).  And the FDA generally does not police over-the-counter labels to ensure compliance with this requirement.

39.     Here, the governing cough medicine monograph does not require, expressly approve, or even mention the "Non-Drowsy" statement.  *See* 21 C.F.R. § 341.74.  Nor do the regulations discuss or approve any substantially similar statement, such as "Non-Sleepy" or "does not make you drowsy."  *Id.*  In contrast, the cough syrup monograph does expressly authorize other statements to be made on the label of cough syrups like Defendant's products. 21 C.F.R. § 341.74(b)(3) (identifying optional statements that "the labeling of the product may contain").  For example, it expressly authorizes the label of cough medicines to say "Temporarily helps you cough less."  *Id.*  If the FDA had authorized "Non-Drowsy," then "Non-Drowsy" would be on the list of authorized statements.  It isn't.

40.     To be sure, the cough medicine monograph does not mandate that products with DXM contain a drowsiness warning.  But this does not show (or even suggest) that the FDA approved an affirmative "Non-Drowsy" claim.

41.     In declining to require a drowsiness warning, the FDA never concluded that DXM does not cause drowsiness.  Like any other regulator, when the FDA decides what warnings to

require, it uses its discretion in deciding which limited set of warnings is crucial, based on the best information available at the time. In other words, the FDA asks which dangers are so extreme, and so clear, as to be crucial to warn the public about. By declining to require a warning, the FDA is not saying that a risk is immaterial to consumers. That logic is dangerous and absurd.

42.     For example, the Consumer Product Safety Commission requires products of certain dimensions to include a "CHOKING HAZARD" warning on their label if they are marketed to toddlers. 16 C.F.R. § 1500.20. This is because objects of these dimensions are most likely to cause choking deaths. But it does not mean that the Commission determined that these are the only products that can cause choking. That inference would allow companies to market toys slightly larger than the threshold dimensions to toddlers and affirmatively claim on the package: "NOT A CHOKING HAZARD." But permitting this false assertion would cause deaths. Ex. A (Characteristics of Objects that Cause Choking in Children, JAMA 274:1763 at 1766, col. 1 (1995)) (Over 1 in 7 nonfood choking deaths are caused by objects larger than the dimensions that trigger the warning requirement). The Commission focused its warning on certain dimensions because they presented the gravest danger of choking, not because it found that all other dimensions present no material danger.

43.     As a second example, the cough syrup monograph itself does not require medicines containing DXM to include an affirmative warning to avoid alcoholic beverages (this warning is required for other cough medications, 21 C.F.R. § 341.74). But elsewhere, the FDA warns consumers to "[a]void alcohol if you are taking…cough-cold products with the ingredient

dextromethorphan." [11]   Again, the Commission used its discretion to decide that it was not necessary to include this warning on the label.  The lack of a mandatory label warning does not tell us that according to the FDA, it is perfectly safe to consume alcohol while taking DXM.

44.    This same logic applies to the lack of a drowsiness warning.  In the 1980s, when the FDA issued the cough medicine monograph, the FDA was "not aware of data demonstrating that … dextromethorphan … require[s] a drowsiness warning."  48 Fed. Reg. 48,576, 48,589 (Oct. 19, 1983).  In other words, the data was insufficient to demonstrate that the risk of drowsiness from DXM was so extreme as to warrant a mandatory label warning.  The FDA never concluded that DXM presents no material risk of drowsiness.  To the contrary, the FDA recognized that cough suppressants such as DXM might trigger "a secondary pharmacological action … tantamount to a sedative effect" and that multiple references found drowsiness to be a side effect.  *Id.*  So far from concluding that DXM does not cause drowsiness, the FDA acknowledged evidence that DXM does cause drowsiness.

45.    Moreover, the FDA evaluated the need for a drowsiness warning in the 1980s. Since then, more evidence has come out showing that DXM causes drowsiness.  This is why reliable sources, like the NIH Library of Medicine, warn that DXM causes drowsiness.  *Id.*  It is also why US regulators that have looked at the issue more recently, such as the FAA, have taken affirmative steps to address this danger, such as prohibiting pilots who have taken DXM from flying.  This recent evidence (not before the FDA at the time) confirms that it is false and misleading to label drugs with DXM "Non-Drowsy."  It also shows why the FDA's 1980s decision not to require an affirmative drowsiness warning—which was expressly based on lack of data—should not be interpreted to give drugmakers today, who now know better, a license to

---

[11] https://www.fda.gov/drugs/choosing-right-over-counter-medicine-otcs/over-counter-medicines-whats-right-you.

falsely assert that their cough medicines are "Non-Drowsy."

      **F.**    **Class Action Allegations.**

46.    Plaintiff brings the asserted claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy CVS Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

47.    For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

48.    For certain claims, Plaintiff brings those claims on behalf a subclass of consumers who, like Plaintiff, purchased Non-Drowsy CVS Products in New York (the "**New York Subclass**").

49.    The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

      *Numerosity*

50.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy CVS Products, there are millions of proposed class members.

17

*Commonality*

51.     There are questions of law and fact common to the proposed class.  Common

questions of law and fact include, without limitation:

- Whether the Non-Drowsy CVS Products cause drowsiness;

- Whether Defendant's labeling of the Non-Drowsy CVS Products as "Non-

   Drowsy" is deceptive and misleading;

- Whether Defendant violated state consumer protection statutes; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

52.     Plaintiff's claims are typical of the proposed class.  Like the proposed class,

Plaintiff purchased Non-Drowsy CVS Products.  Like the proposed class, Plaintiff would not have

purchased the products, or would have paid less for them, had Plaintiff known that they cause

drowsiness.

*Predominance and Superiority*

53.     The prosecution of separate actions by individual members of the proposed class

would create a risk of inconsistent or varying adjudication with respect to individual members,

which would establish incompatible standards for the parties opposing the class.  For example,

individual adjudication would create a risk that breach of the same express warranty is found for

some  proposed class members, but not others.

54.     Common questions of law and fact predominate over any questions affecting only

individual members of the proposed class.  These common legal and factual questions arise from

central issues which do not vary from class member to class member, and which may be

determined without reference to the individual circumstances of any particular class member.

For example, a core liability question is common: whether Defendant's "Non-Drowsy" labeling is false and misleading.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.     Claims.**

<u>**Count I: Breach of Contract**</u>
**(on behalf of Plaintiff and the Nationwide Class)**

56.     Plaintiff incorporates by reference each and every factual allegation set forth above.

57.     Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

58.     Plaintiff and the Class purchased Non-Drowsy CVS Products directly from Defendant.

59.     A valid contract existed between Plaintiff (and the Class) and Defendant.   As part of that contract, Defendant promised Plaintiff and the Class cough medicine that was in fact "Non-Drowsy," i.e., that does not cause drowsiness and that does not have drowsiness as a side effect.

60.     Plaintiff and the Class paid for the Non-Drowsy CVS Products and performed all their contractual obligations.

61.     As alleged in detail above, Defendant materially breached the contract because the Non-Drowsy CVS Products are not, in fact, "Non-Drowsy."

62.     Defendant's breach was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiff and the Class.

63.    As alleged in detail above, the market value of what Plaintiff and Class members received (a medication that causes drowsiness) was less than what Plaintiff and Class members paid for (a "Non-Drowsy" medication).

### Count II: Violations of State Consumer Protection Acts
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

64.    Plaintiff incorporates by reference each and every factual allegation set forth above.

65.    This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following. |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the |

| | following. |
|---|---|
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |

| | |
|---|---|
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

66.     Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendant's conduct, including the false labeling of the Non-Drowsy CVS Products and sale of those misleading products to Plaintiff and class members, violates each statute's prohibitions.

67.     Defendant's misrepresentations were misleading to a reasonable consumer, and Plaintiff and class members reasonably relied on Defendant's misrepresentations.

68.     Defendant intended that Plaintiff and class members would rely on Defendant's "Non-Drowsy" representations.  Defendant was aware of the side effects of DXM and thus knew that its representations were false and misleading to reasonable consumers.

69.     For applicable statutes, Plaintiff has provided written notice and a demand for correction (along with notice of other claims alleged here).  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available monetary relief.

70.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of class members.

71.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased Non-Drowsy CVS Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations, or (c) they received products that were worthless for their intended purpose.  In this way, Plaintiff and class members have suffered an ascertainable loss, in an amount to be determined at trial.

### Count III: Violation of New York Gen. Bus. Law § 349
**(on behalf of Plaintiff and the New York Subclass)**

72.     Plaintiff incorporates by reference each and every factual allegation set forth above.

73.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

74.     Plaintiff and the Subclass purchased Non-Drowsy CVS Products in New York.

75.     Defendant's false and misleading "Non-Drowsy" claims are consumer-oriented. Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy CVS Products. These transactions recur every day.

76.     Defendant's "Non-Drowsy" misrepresentations were material.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected their choice to purchase Non-Drowsy CVS Products.  And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers under the circumstances.

77.     Defendant's misrepresentations were willful and knowing.  Because Defendant makes and sells the Non-Drowsy CVS Products, Defendant researched the known and common

side effects of DXM.  This is diligence that a large company like CVS would do when selling a drug.  As a result, Defendant knows that DXM causes drowsiness.  Furthermore, Defendant controls its labeling, knowingly puts on the "Non-Drowsy" representations, and knows the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading.

78.    Plaintiff and Subclass members suffered an injury as a result of Defendant's misrepresentations.  Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy"), they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations, and they received products that were worthless for their intended purpose.

79.    Plaintiff and the Subclass seek statutory damages of $50, treble damages, reasonable attorney fees, and all other available relief.  *See* N.Y.Gen.Bus.Law § 349 (h).

### Count IV: Violation of New York Gen. Bus. Law § 350
**(on behalf of Plaintiff and the New York Subclass)**

80.    Plaintiff incorporates by reference each and every factual allegation set forth above.

81.    Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

82.    Plaintiff and the Subclass purchased Non-Drowsy CVS Products in New York.

83.    Defendant's false and misleading "Non-Drowsy" claims impacted consumers at large.  Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy CVS Products.  These transactions recur every day.

84.     Defendant's "Non-Drowsy" claims were deceptive and misleading in a material way.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected their choice to purchase Non-Drowsy CVS Products.  And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers under the circumstances.

85.     Plaintiff and the Subclass saw and relied on Defendant's "Non-Drowsy" misrepresentations.

86.     Defendant's misrepresentations were willful and knowing.  Because Defendant makes and sells the Non-Drowsy CVS Products, Defendant researched the known and common side effects of DXM.  This is diligence that a large company like CVS would do when selling a drug.  As a result, Defendant knows that DXM causes drowsiness.  Furthermore, Defendant controls its labeling, knowingly puts on the "Non-Drowsy" representations, and knows the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading.

87.     Plaintiff and Subclass members suffered an injury as a result of Defendant's misrepresentations.  Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy"), they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations, and they received products that were worthless for their intended purpose.

88.     Plaintiff and the Subclass seek statutory damages of $500, treble damages, reasonable attorneys' fees, and all other available relief.  *See* N.Y.Gen.Bus.Law § 350-e (3).

## VI.    Jury Demand.

89.    Plaintiff demands a jury trial on all issues so triable.

## VII.    Prayer for Relief.

90.    Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages (including under N.Y.Gen.Bus.Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.


Date: August 15, 2022                    Respectfully submitted,

                        By:    /s/ *Jonas Jacobson*
                               Jonas Jacobson

                               DOVEL & LUNER, LLP
                               Jonas Jacobson
                               Simon Franzini
                               201 Santa Monica Blvd., Suite 600
                               Santa Monica, CA 90401
                               (310) 656-7066
                               jonas@dovel.com
                               simon@dovel.com

                               Counsel for Plaintiff